# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **Angela Maria Price,**              ) | Case No. 2:15-cv-4339-RBH-MGB |
|              ) | |
| **Plaintiff,**              ) | |
|              ) | |
| v.              ) | |
|              ) | **REPORT AND RECOMMENDATION** |
| **Commissioner, Social Security Admin.,**   ) | |
|              ) | |
| **Defendant.**              ) | |
| _____    ) | |

Plaintiff Angela Maria Price, through counsel, seeks judicial review of an unfavorable final administrative decision denying benefits on her application for a period of disability and disability benefits ("DIB") pursuant to Title II of the Social Security Act ("SSA"). See Section 205(g) of the SSA, as amended, 42 U.S.C. § 405(g). This matter was referred to the assigned United States Magistrate Judge for review pursuant to Local Civil Rule 73.02(B)(2)(a) and 28 U.S.C. § 636(b)(1)(B). Having carefully considered the parties' briefs, administrative record, and applicable authority, the Magistrate Judge recommends that the Commissioner's final decision should be **affirmed**, based on the following proposed findings of fact and conclusions of law:

## I. Relevant Statutory Law

The SSA provides that disability benefits are available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are disabled within the meaning of the statute. 42 U.S.C. § 423(a). The "plaintiff for disability benefits bears the burden of proving a disability." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). Under the SSA, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations set forth a five-step sequential process that considers a plaintiff's age, education, and work experience in addition to the plaintiff's medical condition. 20 C.F.R. §§ 404.1520(a). To be entitled to benefits, the plaintiff "(1) must not be engaged in substantial gainful activity, i.e., currently working; and (2) must have a severe impairment that (3) meets or exceeds the listings of specified impairments, or is otherwise incapacitating to the extent that the plaintiff does not possess the residual functional capacity to (4) perform [the plaintiff's] past work or (5) any other work." *Albright v. Comm'r*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The plaintiff bears the burden of production and persuasion through the fourth step. If the plaintiff reaches step five, the burden shifts to the government to provide evidence that other work exists in significant numbers in the national economy that the plaintiff can do. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*).

## II. Background

The facts have been extensively set forth in the ALJ's decision (AR 17-33) and in the parties' briefs (DE# 12-14), and need only be summarized here. Plaintiff was born June 3, 1968 and was age 43 ("younger") on the alleged disability onset date of November 30, 2011. See 20 C.F.R. § 404.1563 (defining "younger" as age 18-49). Plaintiff graduated from high school, attended one year of college, has specialized job training in medical billing and coding, and communicates in English. (AR 67, 172-174). She is married, lives with her husband and teen-age step-daughter. (AR 68). She has a driver's license and drives a car. (AR 20, 23, 83).

Plaintiff indicates she was fired from her job on November 29, 2011 for tardiness and absenteeism. (AR 68, 173). That same day, Plaintiff had a "microdiscectomy" back surgery.[1] (AR

---

[1] Microdiscectomy is defined as "a minimally invasive surgical procedure in which a portion of a herniated nucleus pulpolsus is removed by way of a surgical instrument or laser while using an operating microscope or loupe for magnification." See https://en.wikipedia.org/wiki/Discectomy.

23, 70, 78). Her treating surgeon Dr. Phillip Esce indicated Plaintiff did "very well" with the surgery. Plaintiff then applied for and received unemployment benefits. Plaintiff acknowledges that she certified in late 2011 and early 2012 that she was able and willing to work. (AR 68).[2]

On February 10, 2012, Plaintiff filed an application for DIB benefits, alleging disability due to diabetes, arthritis, and degenerative "disc" and "joint" disorder of lower back. (AR 173). She also later complained of obesity, hypertension, and anxiety. (AR 17, 19-20). Later that year in August 2012, based on her complaints that some back pain had returned, Plaintiff had a second "microdiscectomy." (AR 27). Treatment notes two weeks later indicate that Plaintiff had only "minimal pain" and had returned to full activity. (AR 30, citing 9F/2, 8/30/2012). Subsequent notes from follow-up visits continue to indicate that Plaintiff had only "minimal" pain and had returned to full activity. (AR 378, 12/11/2012). Plaintiff has not had any further back surgery. (AR 23, 70, 78). Treatment notes that reference Plaintiff's diabetes, hypertension, and anxiety repeatedly indicate that these were well-controlled with medication, especially when Plaintiff was compliant with medical recommendations. (AR 295, notes on 6/13/2012 "her blood pressure and blood sugars have been well controlled;" AR 362 "not anxious;" AR 366-68 notes on 12/5/2012 "diabetes much improved;" AR 371 notes on 9/19/ 2012, prescribing "low dose" of anxiety medication as patient was "slightly anxious"). Post-surgery treatment notes in 2012-2013 repeatedly indicate that Plaintiff was alert and cooperative, had normal mood and affect, and had normal attention span and ability to concentrate. (AR 364, 396).

For activities of daily living, Plaintiff reported that she walks without assistance, goes to church, drives a car, grocery shops with her husband, visits friends, occasionally cooks meals, puts laundry in the washer and does some folding, goes out to eat, attends movies, does pool therapy

---

[2] Plaintiff did some work after her alleged disability onset date, but the ALJ found that it did not rise to the level of substantial gainful activity. (AR 19, Finding 2).

all day at her sister's swimming pool, and goes on vacation annually in Myrtle Beach. (AR 20-23, 71-83). Doctor's notes in October 2012 also indicate that Plaintiff reported being the primary caretaker of her mother, who had Alzheimer's disease, although her mother went to a nursing home at some point. (AR 28, 84, 368).

Plaintiff's DIB application was denied initially and on reconsideration. (AR 17). Upon Plaintiff's request, the administrative law judge ("ALJ") scheduled a hearing and ordered multiple independent medical reviews (physical and mental). At the hearing on January 23, 2014, Plaintiff (represented by counsel) and vocational expert Ashley Johnson ("VE") both testified. Plaintiff testified that her main physical problem is lower back pain and that she takes medication for it (Ibuprofen, Lortab, and Mobic). (AR 23, 69-71). She walks without a cane, and no doctor has ever referred her to a pain management specialist. (*Id.*). Plaintiff indicated she has past relevant work experience as: 1) a clothing inspector; 2) trainer; 3) parts inspector; and 4) a yarn preparation supervisor. (AR 31, 86-89, 174, 185-194). The VE testified that these jobs are all classified as "light" work, but noted that Plaintiff had claimed that she performed jobs 1-3 at the "heavy" exertional level and job 4 at the "medium" exertional level. (AR 31, 88-89).

At the hearing, the ALJ posed a hypothetical question to the VE that incorporated all the restrictions found credible.[3] The VE testified that Plaintiff could perform her past work classified as ("light"), but not as allegedly performed ("heavy"). The VE further testified that Plaintiff could do her past work that was performed as "medium," as well as other jobs, such as: 1) kitchen helper (SVP level 2, "medium" with 2,300 jobs regionally and 282,000 jobs nationally); 2) industrial

---

[3] The ALJ limited Plaintiff to a range of "medium" work. If a person can do medium work, the regulations assume that the person can also do sedentary and light work. 20 C.F.R. § 404.1567(c) (2015). The ALJ asked the VE to consider a hypothetical person "the same age as the Claimant with the same educational background and past work experience. Further assume this individual retains the capability of lifting 50 pounds occasionally, 25 pounds frequently; stand six of eight hours, walk six of eight hours, and sit six of eight hours; climbing ropes, ladders, and scaffold, balancing, stooping, kneeling, crouching, and crawling, frequent." (AR 23, 88-89).

cleaner (SVP level 2, "medium" with 11,000 jobs regionally and 1,077,000 jobs nationally; and 3) laundry worker. (AR 89). The ALJ posed an even more restrictive hypothetical question, but those restrictions were not found credible. (AR 90).

On April 21, 2014, the ALJ issued a decision, finding that the Plaintiff was not disabled from the alleged onset date (November 30, 2011) through the date of decision. (AR 17-33). In his decision, the ALJ discussed the medical evidence at considerable length. (AR 23-26). He noted that X-rays on October 5, 2010 showed that Plaintiff's lumbar spine was normally aligned with no acute findings and only mild degenerative changes at L-3-L-4 and L-4-L-5 and that an MRI on November 22, 2010 revealed only mild disc disease. (AR 24). Plaintiff had a microdiscectomy on November 30, 2011 to correct this. Although Dr. Esce's notes indicated Plaintiff had done "very well" after such procedure, Plaintiff later complained that her pain had returned. She had a second microdiscectomy on August 15, 2012.

Approximately two weeks later on August 30, 2012, treatment notes indicate that Plaintiff had no post-operative complications, her symptoms were "much improved" with only "minimal" pain, and that Plaintiff had returned to full activity. (AR 24, citing Ex. 9F/2; see also AR 380, Ex. 12F/6, notes 10/18/2012 "post operative pain has been minimal"). The following year, on May 30, 2013, follow-up examination of her lumbosacral spine at Dr. Esce's office revealed "no tenderness to palpation, no pain, no swelling, edema …no radicular symptoms with movement of lumbar spine" and functional testing revealed "negative straight leg raise" on the right and left, and negative Fabere tests (flexion, abduction, external rotation, and extension of the hip) on both sides. (AR 27-28, citing Ex. 18/2). The ALJ noted that another treating source Dr. Coy Eaton repeatedly noted unremarkable physical findings, indicated that Plaintiff reported tolerating activities well,

and indicated that Plaintiff's blood pressure was well-controlled with medication. (AR 25, citing 7F, 16F, 19F, 21F).

After considering the medical evidence, the ALJ determined that Plaintiff's degenerative disc disease of the lumbar spine and diabetes mellitus qualified as "severe" impairments for purposes of the SSA (AR 19, Finding 3), but were not of listing-level severity. (AR 21, Finding 4). See 20 C.F.R. Pt. 404, Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(d), 1525, 1526. The ALJ noted that state agency reviewing physicians had reviewed the medical evidence (including follow-up notes after the second surgery) and that they had independently concluded that Plaintiff's impairments did not meet any listing. (AR 21, citing Exs. 2A and 4A).[4]

The ALJ considered the Plaintiff's functional abilities and determined that Plaintiff had the residual functional capacity ("RFC") to perform a range of medium work. (AR 29). Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If a person can do medium work it is assumed that the person can also do sedentary and light work. 20 C.F.R. § 404.1567(c) (2015). The ALJ pointed out that Dr. Dale Van Slotten, M.D. and Dr. Matthew Fox, M.D. had independently reviewed the medical record as of May 2012 and concluded that Plaintiff was capable of medium work with frequent postural movements. (AR 29, citing Exs. 2A, 4A; see AR 99-110). The ALJ considered and gave "limited weight" to the one-page forms submitted by Drs. Esce and Eaton opining that Plaintiff was capable

---

[4] The ALJ found other alleged impairments to be non-severe. (AR 20). Regarding obesity, Plaintiff indicated she is 5'7" and weighs 215 pounds. (AR 23, 69). She testified her weight did not cause her any problems or affect her ability to maintain employment. (*Id.*). As for alleged anxiety, the ALJ observed that this was well-controlled with medication. (AR 20, citing Exs. 2F, 3F, 7F, 15F, and 20F). Plaintiff testified that she took anxiety medication prescribed by a family doctor, but that she does not see a psychologist or psychiatrist, that no doctor had ever recommended any such treatment for her, and that she has never required hospitalization for psychiatric reasons. (AR 23, 76-77). The medical records repeatedly indicated she was alert, oriented, and not anxious upon examination. (AR 366-67, 396). The state agency reviewer indicated any mental impairment was non-severe. (AR 97-98, 106). The medical records also repeatedly indicated that Plaintiff's hypertension was well-controlled with medication. Plaintiff has not challenged this step of the decision.

of less than a full range of sedentary work. The ALJ explained his reasons at significant length, including that such opinions were inconsistent with the doctors' own treatment records and other evidence. (AR 29-31).

The ALJ determined that Plaintiff's allegations about the intensity, persistence, and limiting effects of her symptoms were "not fully credible." (AR 26). The ALJ pointed to Plaintiff's daily activities and to numerous inconsistencies with medical records. For example, despite Plaintiff's claim of average daily pain of 8 to 10 on a scale of 0 to 10, her doctors' treatment notes repeatedly indicated that she reported her pain was minimal and that she had returned to "full activity." (AR 26-27). The ALJ noted that Plaintiff sat through the hearing without showing any discomfort. (*Id*.). The ALJ also noted that although Plaintiff claimed to be totally disabled as of November 30, 2011, she had obtained unemployment benefits by holding herself out as ready and able to work after that time, and that while not determinative, this detracted from her credibility. (*Id*.). After considering the voluminous record as a whole, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the SSA. (AR 17-33).

Plaintiff then requested review and submitted new evidence to the Appeals Council. (AR 6, "The Appeals Council has received additional evidence which it is making part of the record."). The new evidence consisted of treatment notes of Dr. Bogdan Gheorghiu, M.D., dated February 17, 2014 through January 7, 2015. The notes of February 17, 2014 indicated that "physical therapy helped Plaintiff's back" and recommended "continue the exercise regimen, massage therapy, and medications." (AR 463-64).

The remainder of the newly-submitted evidence is dated after the ALJ's decision of April 21, 2014. Follow-up treatment notes of May 23, 2014 reflect that Plaintiff reported Lyrica helped, and that examination revealed full strength, no muscle atrophy, and a normal gait. (AR 461). The

notes of January 7, 2015 again indicate that Lyrica was "definitely helping," that Plaintiff had normal gait, 5/5 strength, no atrophy or abnormal movements, and normal attention span and concentration. (AR 459-460, advising a follow-up visit in six months). The Appeals Council denied further review (AR 1-4), and the ALJ's decision is the Commissioner's final decision.

## III. Standard of Review

The Court's review of the Commissioner's final decision is limited to: (1) whether substantial evidence supports such decision; and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Perales*, 402 U.S. at 401). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance." *Smith v. Chater*, 99 F.3d 635, 637–38 (4th Cir. 1996).

The reviewing court may not re-weigh the evidence, make credibility determinations, or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. It is the duty of the Commissioner, not the courts, to make findings of fact and resolve conflicts in the evidence. *Id.*; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("the court does not find facts or try the case *de novo* when reviewing disability determinations"). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the court would decide the case differently. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. Discussion

Plaintiff disputes whether the ALJ properly weighed the opinions of two treating physicians regarding Plaintiff's functional abilities. When evaluating medical opinions, an ALJ considers: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Dunn v. Colvin*, 607 F.App'x 264, 2015 WL 3451568 (4th Cir. 2015) (citing *Johnson*, 434 F.3d at 654); SSR 96–2p; 20 C.F.R. §§ 404.1527, 416.927. Generally, the more the physician presents relevant evidence to support the opinion, and the better the physician explains it, the more weight such opinion is given. 20 C.F.R. § 404.1527(d)(3). The nature and extent of a treatment relationship also affects the weight given by an ALJ. 20 C.F.R. §§ 404.1527(d)(2)(ii), 416.927(d)(2)(ii).

An ALJ need not always give a treating opinion controlling weight. *Hunter*, 993 F.2d at 35. "If a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Boyd v. Colvin*, Case No. 0:13–cv–00638–TLW-PJG, 2014 WL 4097924, *5 (D.S.C). The more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. 20 C.F.R. § 404.1527(d)(4); 20 C.F.R. § 404.1527(c)(3) (providing for greater weight where a medical opinion is supported by relevant evidence, particularly medical signs and laboratory findings). Moreover, opinions by a physician regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the SSA are never given controlling weight because such decision is reserved to the Commissioner. 20 C.F.R. § 404.1527(e).

In considering the evidence as a whole, the ALJ properly discounted the opinions of Drs. Esce and Eaton regarding Plaintiff's functional limitations. (AR 29-31). Dr. Esce first evaluated Plaintiff on December 29, 2010 and later performed the microdiscectomies in 2011 and 2012.

Despite treatment notes indicating a successful second surgery and a return to full activity, Dr. Esce completed one-page form on June 14, 2012 consisting of "yes or no" answers to some leading questions, thus indicating a highly-restrictive opinion that Plaintiff could perform less than a full range of sedentary work. (AR 283).[5] Dr. Eaton is Plaintiff's primary care physician who first evaluated Plaintiff on October 5, 2010. Despite his notes showing Plaintiff's marked improvement after the second procedure, Dr. Eaton completed the same one-page form on June 21, 2012, giving the same answers to the same leading questions. (AR 286).[6]

After reviewing all the evidence, the ALJ appropriately determined that these opinions were inconsistent with the doctors' own examination findings and treatment records, were inconsistent with other medical opinions of record, and were inconsistent with the Plaintiff's own reports to various health care providers about her health and activities. (AR 29-31). See 20 C.F.R. § 404.1527; *and see e.g., Martise v. Astrue*, 641 F.3d 909, 926 (8th Cir. 2011) (treating physician's opinion is properly discounted when it is inconsistent with his treatment notes and other medical evidence). The ALJ indicated that the doctors' own treatment records repeatedly showed overall improvement over pre-operative status, mild symptoms, minimal pain, improved functioning, that medications were working well, and that Plaintiff had returned to full activity. (AR 27-31, citing Exs. 7F, 20F, 21F, and 25F). An ALJ may reject a treating source opinion when it is not supported by the evidence. *Hunter*, 993 F.2d at 35 ("The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence…").

---

[5] Dr. Esce also signed a typed paragraph, dated November 8, 2012, for Plaintiff's counsel. (AR 365).

[6] Courts have recognized the "limited probative value" of such forms, especially when they lack well-supported explanatory notes. *See, e.g., McGlothlen v. Astrue*, 2012 WL 3647411, *6 (E.D.N.C.); *Shelton v. Colvin*, 2015 WL 1276903, *13 fn.6 (W.D.Va. Mar. 20, 2015); *Leonard v. Astrue*, 2012 WL 4404508, *4 (W.D.Va. Sept. 25, 2012); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("check-the-box assessments without explanatory comments are not entitled to great weight"); *Foushee v. Colvin*, 2014 WL 6831766, *3 (M.D.N.C. Dec. 3, 2014) (referring to it as "weak evidence").

The ALJ appropriately gave limited weight to Dr. Eaton's form opinion of Plaintiff's functional abilities. On June 13, 2012 (several months after the second microdiscectomy), Dr. Eaton saw Plaintiff for a sinus infection and indicated in his notes that Plaintiff "did well with [back surgery] and has only mild residual pain." (AR 295). Despite such findings, Dr. Eaton indicated a week later on June 21, 2012 that Plaintiff could do less than a full range of sedentary work. (AR 30, 286). Dr. Eaton responded "yes" when asked whether Plaintiff would probably have to rest away from the workstation for significantly more than one hour during the workday, miss more than three days of work per month, and have problems with attention and concentration sufficient to frequently interrupt tasks. (AR 286). Dr. Eaton provided no explanation for the basis for such highly–restrictive opinion.

The ALJ explained that Dr. Eaton's opinion was inconsistent with his own treatment records and other evidence, which reflected much physical improvement after Plaintiff's second surgery and no problems with attention or concentration. (AR 30-31, citing Exs. 6F, 7F). Post-surgery treatment notes in 2012-2013 repeatedly indicate that Plaintiff was alert and cooperative, had normal mood and affect, and had normal attention span and ability to concentrate. (AR 364, 396). The evidence did not indicate that Plaintiff had any difficulty functioning due to any difficulty in concentrating or maintaining attention. See 20 C.F.R. § 404.1569a(c)(1). The Commissioner asserts that substantial evidence supports the ALJ's finding, because Dr. Eaton indicated in his 2012-2013 notes that Plaintiff had done well with back surgery, had only mild residual pain, was in no acute distress, continued to improve, and had stable symptoms. (DE# 13 at 7-8, 16-17; AR 287, 295, 368, 404). Although Plaintiff complained of some aggravation of back pain in May 2013, she obtained some relief with medication, i.e. Lortab (AR 401). The ALJ

provided sufficient reasons for why he gave limited weight to Dr. Eaton's opinion and adequately discussed those reasons in his decision (AR 30). See 20 C.F.R. § 405.1527(c)(4).

Like Dr. Eaton, Dr. Esce provided a one-page opinion indicating "yes" when asked whether Plaintiff would need to rest away from the workstation for significantly more than one hour during the workday, miss more than three days of work per month, and have problems with attention and concentration sufficient to frequently interrupt tasks. The ALJ aptly noted that "there is no explanation or rationale to explain why the claimant will miss three times per month and I can only conclude that the statement is conjecture…" (AR 30). As already discussed, treatment notes in 2012-2013 repeatedly indicated that Plaintiff was alert and cooperative, had normal mood and affect, and had normal attention span and ability to concentrate. The ALJ observed that Dr. Esce had examined Plaintiff on numerous occasions, and found no numbness or weakness, normal muscle strength, and no radicular symptoms after the second procedure. (AR 30, Ex. 20F). In other words, the record did not reflect symptoms that would be expected to cause problems with attention and concentration sufficient to frequently interrupt tasks. The ALJ noted that, although Plaintiff had complained of some pain on July 11, 2013, examination reflected normal strength in all muscles, and the treating physician recommended only Ibuprofen. (AR 25, citing Ex. 20F/3).

Although Plaintiff argues that the repeated finding of normal strength is "irrelevant" (DE# 12 at 22), the exertional requirements for work include "strength" requirements by definition.[7] Although Plaintiff urges that the "negative findings" do not provide a basis to assign less weight "in light of the positive findings" (DE# 12 at 22, DE#14 at 4), this amounts to an invitation to re-weigh the evidence, which is not permissible. A reviewing court may not re-weigh the evidence

---

[7] Exertional capacity addresses a person's limitations and restrictions of physical strength and defines the person's remaining ability to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 96-9p.

or substitute its judgment for that of the Commissioner, rather, the pertinent inquiry is whether the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456.

The ALJ's decision is supported by substantial evidence. The ALJ pointed out that Dr. Esce's notes and other treatment records reflected overall improvement after Plaintiff's second surgery on August 15, 2012. (AR 30). The ALJ observed that the evidence showed that Plaintiff had only intermittent low back pain, had no radiculopathy, and that she had normal gait, normal sensation and coordination, and full muscle strength. (AR 30, 378-79, 412, 419, 457). The ALJ pointed out that Plaintiff had reported on August 30, 2012 that she was "much improved," her postoperative pain was minimal, her medication was working well, and that she had returned to full activity (AR 30, 361). In July 2013, Dr. Esce noted Plaintiff had full strength in all muscles and instructed her to take ibuprofen for any pain (AR 30, 418-19).

The ALJ appropriately explained that Dr. Esce's opinion that Plaintiff would allegedly have difficulty with attention and concentration was inconsistent with the overall record. (AR 30, 283). Dr. Esce's own treatment records (and other treating sources) repeatedly indicated that Plaintiff had normal attention and concentration (AR 30, citing Exs. 3F and 9F; see AR 265-77, 280).[8] Dr. Esce's suggestion that Plaintiff would need to rest away from the workstation was inconsistent with his notes indicating that Plaintiff retained normal gait, normal muscle strength, sensation, and coordination (AR 380-81, 457). The ALJ observed that the evidence reflected that Plaintiff's radicular pain had resolved and her low back pain had improved after the second surgery (AR 30, 267, 274-76, 280, 284-85, 361). The ALJ appropriately gave limited weight to Dr. Esce's

---

[8] Even the post-decision evidence that Plaintiff submitted to the Appeals Council showed that she had "normal attention span and concentration" (AR 457, 459, 461). The Appeals Council considered such newly-submitted evidence and indicated it "found no reason under our rules to review the [ALJ's] decision." (AR 1).

opinion that Plaintiff would be unable to perform less than a full range of sedentary work.[9] The ALJ appropriately did not give controlling weight to Dr. Esce's January 20, 2014 treatment note stating Plaintiff "will not be able to seek gainful employment" (AR 457) because such decision is reserved to the Commissioner. 20 C.F.R. § 404.1527(e).

The ALJ gave good reasons for giving the opinions of Drs. Esce and Eaton "limited" weight. A treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(d)(2)-(4) and 416.927(d)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *Craig*, 76 F.3d at 590. The ALJ gave appropriate reasons for the limited weight assigned to these opinions.

Plaintiff also appears to complain that the ALJ gave more weight to the opinions of the state agency physicians Dr. Matthew Fox, M.D., and Dale Van Slooten, M.D. The ALJ appropriately weighed the opinions of these state agency physicians who independently concluded upon review of the medical record that Plaintiff would be able to perform medium work with frequent postural movements (AR 99-100, 109-10). See 20 C.F.R. § 405.1527(c)(4) (providing for more weight where an opinion is consistent with the record as a whole). The ALJ may consider opinions of non-examining medical sources. See 20 C.F.R. § 404.1527(e) (providing for the consideration of opinions of medical and psychological consultants and other nonexamining physicians and psychologists). State agency physicians are highly qualified experts in the evaluation of the medical issues in disability claims under the SSA. 20 C.F.R. §404.1527(e)(2)(i); SSR 96-6p, 61 Fed. Reg. 34466 (1996); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d. 356, 361 (3d

---

[9] The post-decision treatment records of Dr. Gheorghiu in 2014 show that physical therapy, massage therapy, and Lyrica also helped with Plaintiff's back pain and that her physical examination was otherwise normal (AR 463-64).

Cir. 2011) (explaining that state agency medical consultants are experts in Social Security disability evaluations).

Although Plaintiff complains that Drs. Fox and Van Slooten were unaware of later evidence submitted by Plaintiff after their reviews, such doctors appropriately considered and relied on the medical evidence of record as of May 2012, the date of their opinions (AR 99-100, 109-10). Such opinions included consideration of Plaintiff's successful surgeries, evidence of her improvement, minimal back pain, and other normal examination findings. The Commissioner points out that the fact that such opinions preceded other evidence in the record does not render them unreliable. (DE# 13 at 17), citing *Chandler*, 667 F.3d at 361 ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing decision. The Social Security regulations impose no limitation in how much time may pass between a report and the ALJ's decision in reliance on it."). In the present case, the ALJ appropriately considered the state agency reviewers' opinions regarding Plaintiff's functioning in the context of all the evidence of record, including treatment notes from 2013.

In conclusion, there is substantial evidence in the record to support the Commissioner's final decision that Plaintiff was not disabled within the meaning of the SSA.

Accordingly, the Magistrate Judge recommends that the Commissioner's final decision is supported by substantial evidence and should be **AFFIRMED**.

**IT IS SO RECOMMENDED.**

December 29, 2016
Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

Plaintiff's attention is directed to the following **important notice**:

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).